**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DERRICK URSIN, individually and on behalf of others similarly situated, | CIVIL ACTION NO. |
| Plaintiffs, | SECTION: |
| v. | MAGISTRATE: |
| LIBERTY PERSONAL INSURANCE COMPANY, | |
| Defendant. | CLASS ACTION |

## COMPLAINT

The Complaint of Derrick Ursin, an individual of full age of majority domiciled and residing in the Parish of Baton Rouge, State of Louisiana, individually and on behalf of all others similarly situated, hereinafter referred to as Mr. Ursin or Plaintiff, brings this suit as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), against Defendant Liberty Personal Insurance Co. ("Defendant" or "Liberty Personal"), respectfully representing as follows:

1.     Made Defendant in this cause of action is Liberty Personal Insurance Co., a Massachusetts corporation with its principal place of business in Boston, Massachusetts, and who may be served through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, LA, 70809.

2.     Defendant is liable to Plaintiff and all others similarly situated for any and all elements of damages allowed by Louisiana law, including penalties, the costs of litigation, and attorneys' fees, just and reasonable in the premises.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars; and (c) none of the exceptions under §1332 apply to this claim.

4.      At all relevant times, Plaintiff and putative class members were Louisiana policyholders and residents, and Defendant is a foreign corporation licensed to do business and transact in insurance in Louisiana.

## VENUE

5.      Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district. Plaintiff is a citizen of the State of Louisiana, residing and domiciled in the Parish of Baton Rouge.

## I.      NATURE OF THE CASE

6.      Defendant is an automobile insurer in Louisiana and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative Class Members, are form policies that promise to pay for loss up to a limit on liability of actual cash value ("ACV").

7.      Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

8.      Total loss scenarios are taxing. Not only has the insured likely suffered more than a minor accident – and thus are often dealing with potential medical injuries – but there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

9.      Louisiana law, in an attempt to minimize the uncertainty surrounding total loss situations, prescribed certain regulatory requirements that all insurers must follow when reimbursing insureds after their vehicle is determined a total loss.

10.     Specifically, LSA-R.S. 22:1892B(5) governs the adjustment and claim payment for total-loss vehicles, *i.e.*, where insurers decline to repair a vehicle and choose to instead base its payment on the vehicle's actual cash value. The statute requires payment of "the actual cost to purchase a comparable vehicle" and prescribes three methods by which insurers can derive such cost. *Id*.

11.      The options are: (1) A fair market value survey using qualified retail automobile dealers in the local market; (2) the "retail cost as determined from a generally recognized used motor vehicle industry source…"; or (3) an expert appraiser selected and agreed to by both the insurance company and the insured. LSA-R.S. 22:1892B(5)(a)-(c).

12.     Unsurprisingly, given that Louisiana requires payment of the ***actual*** cost to purchase a comparable vehicle, at least two of the methods permitted – the fair market survey method and the industry source method – require use of the retail cost of the vehicle. This requirement prevents insurers from artificially devaluing totaled vehicles by using unreliable Craigslist postings from private sellers, or suspect price listings from "buy-here-pay-here" type car sellers. Instead, Louisiana requires use of "qualified retail" car dealers and "recognized used motor vehicle industry sources" to determine the "retail cost" of comparable vehicles.

13.     Defendant, however, fails entirely to abide by such requirements, and, in so doing, breaches its contract with its insureds in bad faith and violates numerous Louisiana regulatory requirements.

14.     Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). Through the Autosource system, Defendant artificially, capriciously, and intentionally undervalues or devalues total-loss vehicles in order to pay less than the ACV amount required by its policy and Louisiana law.

15.     Ostensibly, the Autosource system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle. However, in violation of Louisiana law, to determine the value of the totaled vehicle, Autosource relies on vehicles outside the relevant market, only identifies to the insured a few of the comparable vehicles identified, and incorporates unfounded downward price adjustments. In so doing, Defendant fails to compensate insureds for their loss and fails to pay the minimum amount required by its policy and Louisiana law.

16.     Defendant does so through hidden or obscure "adjustments" to and averaging of comparable vehicles, artificial "typical negotiation" adjustments, and so forth. For example, Defendant often makes adjustments based on vehicle condition. Defendant purports to compare the total-loss vehicle to the comparable vehicles and "adjust" the amount up or down if the total-loss vehicle is in better or worse condition than the comparable vehicles. But neither Defendant

nor its agents actually *see or evaluate* the comparable vehicles, and thus have no basis for determining that the total-loss vehicle is worse in comparison.[1]

17.     Another example is the "typical negotiation" adjustment. Defendant represents that it reflects some sort of average difference between list price and "what the dealer would be willing" to sell it for. But Defendant does not actually base that on conversations with the sellers of the comparable vehicles – instead, the adjustment is nothing more than another illegitimate and capricious way to undervalue the total-loss vehicles.

18.     Even if the "typical negotiation" adjustment were legitimate, however, its implementation is pernicious for another reason. Consider a hypothetical vehicle listed at $10,000.00, to which Defendant would apply its "typical negotiation" adjustment (for the sake of this hypothetical, Plaintiff uses 5%). A 5% adjustment would mean the actual amount used by Defendant for that comparable vehicle would be $9,500.00, for a "typical negotiation" adjustment of $500.00. Now assume the total-loss vehicle had a feature that the comparable vehicle did not, with a value of $800.00. Defendant would *first* add the $800.00 to the comparable vehicle (now $10,800.00) – even though the whole point is that the comparable vehicle is missing the feature – and then apply the 5% adjustment. This means that the "typical negotiation" adjustment would be $540.00 ($10,800.00 * .05), rather than $500.00.

19.     It gets worse. Assume that it is the *comparable* vehicle that has a feature or factor missing from the total-loss vehicle, with a value of $800.00. If so, Defendant does the opposite – it *first* applies the 5% adjustment, which would total $500.00 ($10,000.00 * .05), and only then subtracts the $800.00. If Defendant treated the two situations consistently, it would first subtract

---

[1] Of course, even if the total-loss vehicle were in poorer condition than the retail vehicle, Louisiana law requires payment of the "actual cost to purchase a comparable vehicle" based on the "retail cost" of comparable vehicles or a survey of "retail" auto sellers.

the $800.00 from the comparable vehicle (now $9,200.00) and then apply the 5% adjustment, which would total $460.00 ($9,200.00 * .05). In other words, even assuming all of Defendant's arbitrary and baseless adjustments were valid (they are not), Defendant orders the adjustments in whatever way is most disadvantageous to insureds.

## II.    PLAINTIFF'S ACCIDENT AND VALUATION

20.    At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2014 Jaguar XF. *See* Exh. A (Policy).

21.    On or about August 14, 2016, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle and elected to determine it was a total-loss.

22.    Defendant, through the Autosource system, purportedly determined that the vehicle value was $36,431.00, to which Defendant added sales tax and subtracted the deductible for a total of $39,824.10. *See* Exh. B (Market Valuation Report) at 4.

23.    This pre-tax amount of $36,431.00 is significantly less than value determined by "recognized used motor vehicle industry source" such as NADA or KBB. For example, NADA values Defendant's vehicle, with all optional equipment and packages, at a pre-tax amount of approximately $39,300.00.

24.    Not only was Plaintiff victim to Defendant's general scheme of using arbitrary and capricious selection of some vehicle and not others, as well as the "typical negotiation" adjustment, but Plaintiff was also victim to Defendant's "ordering" of adjustments to Plaintiff's disadvantage, such that even an adjustment purportedly in Plaintiff's favor was tempered.

25.    An example can be seen in the first comparable vehicle details on page 8 of Exhibit B (although the same is true of the remaining vehicles). First, Defendant represented – without

basis – that the "typical negotiation" adjustment would be 4%. Exh. B at 8. The first vehicle's price is $31,093.00. *Id*. Defendant then clarifies that this amount was not actually the list price – instead, the advertised price of $30,899.00 was adjusted for "typical negotiation" of $1,296.00. But $30,899.00 * .04 is only $1,235.96, or $60.04 less than the "typical negotiation" amount, and thus, even on Defendant's own terms, it should have only subtracted $1,235.96 from the advertised price. The explanation comes from the $1,490.00 positive adjustment. Defendant first applied that adjustment to the advertised price, which would come to $32,389.00. This new amount multiplied by .04 equals $1,296.00.

26.     In other words, Defendant first selected vehicles from irrelevant markets or with artificially low values while avoiding those that would have been favorable to Plaintiff to arrive at an average price thousands and thousands of dollars lower than the value assigned by actual motor vehicle industry sources such as NADA. Then, when Defendant purportedly made an adjustment in Plaintiff's favor – although even with the adjustment, Defendant still intentionally undervalued the vehicle by approximately $3,000.00 – it nevertheless ordered the adjustments to its own advantage and Plaintiff's disadvantage.

## III.     DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(a)

27.     LSA-R.S. 22:1892B(5)(a) permits the use of a "fair market value survey conducted using qualified retail automobile dealers in the local market area as resources." The Autosource system used by Defendant does not qualify. Instead, the system utilizes national data, which Defendant obscures from its insureds.

28.     In Plaintiff's case, for example, Defendant utilized "comparable" vehicles from places such as Bammel, Texas (almost 250 miles from Baton Rouge) and Little Rock, Arkansas (almost 350 miles from Baton Rouge).

29.     Thus, Defendant does not abide by LSA-R.S. 22:1892B(5)(a).

### IV.     DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(b)

30.     The Autosource system used by Defendant is also not a "generally recognized used *motor vehicle* industry source" within the meaning of § 22:1892B(5)(b). The Autosource system is marketed solely to insurance companies, and is used by insurance companies, such as Defendant, to artificially and illegitimately deflate the value of total-loss vehicle in making total-loss claim payments.

31.     The difference between a "motor vehicle industry source", designed to reflect an *accurate* vehicle value, and an insurance industry source, designed to find an artificially-low value favorable to insurance companies, is seen in Plaintiff's case, where an actual "motor vehicle industry source" identified the value of Plaintiff's vehicle as approximately $3,000.00 higher than did Defendant.

### V.     DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND VIOLATES LOUISIANA LAW

32.     Defendant is aware that the Autosource valuation system results in unlawfully low vehicle valuations, and that, were Defendant to use a method prescribed by Louisiana law, the amounts paid to total-loss insureds would be significantly higher.

33.     Because actual motor vehicle industry players and sources are aware of and accurately reflect the used vehicle market – which are then used by others in the industry, including car dealers, and relied upon by consumers – it is virtually impossible for a system designed to provide an artificially *lower* amount to indemnify insureds for their loss.

34.     Defendant is aware that motor vehicle industry sources provide higher – and more accurate – vehicle values than Autosource.

35.     The arbitrary and capricious vehicle values provided by Autosource is lower than "the actual cost to purchase" a vehicle of like kind and quality, and concomitantly lower than the vehicle's fair market retail cost. Moreover, it is lower than the vehicle's ACV, as reasonably understood under the Policy and as conformed to Louisiana law.

36.     Defendant's failure to properly pay the actual cash value of an insured's loss constitutes a breach of contract. Defendant's use of a system that intentionally devalues total-loss vehicles constitutes a breach of contract.

37.     Defendant breaches its contracts with insureds by refusing to utilize a legitimate method prescribed by LSA-R.S. 22:1892B(5), thereby refusing to pay the recognized "actual cost to purchase" or market retail cost as required by Louisiana law and its own Policy.

38.     Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

39.     As set forth above, Defendant violates LSA-R.S. 22:1892 because it does not use a survey of qualified retail automobile dealers in the market area or the closest nearest market area – Autosource utilizes data from across the country and its algorithms are not merely illegitimate and arbitrary, but are based on national data – and because it does not utilize a recognized motor vehicle industry source. And even if Defendant did, its system is designed not to pay the "actual cost to purchase" or market retail cost for the total-loss vehicle.

40.     Defendant's conduct set forth herein and use of the Autosource system constitutes violations of La. R.S. § 22: 1973A in that Defendant violates its "duty of good faith and fair dealing" by failing to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with its insureds.

41.    Upon information and belief, Defendant intentionally undervalues the total-loss claims, about which it knowingly and intentionally misinforms and misleads insureds concerning the Autosource system, including the selection of "comparable" vehicles and utilizations of adjustments, and otherwise violates its duty of good faith and fair dealing and Louisiana law.

42.    Defendant's conduct set forth herein and use of the Autosource system constitutes violations of La. R.S. § 22: 1973B(5) in that Defendant fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss" and such failure is "arbitrary, capricious, or without probable cause."

43.    Defendant's Policy, to the extent inconsistent, is conformed to comply with Louisiana law.

## VI.    CLASS ACTION

44.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks to certify and represent the following Classes:

### Valuation Class

All Liberty Personal Insurance Co. insureds in the State of Louisiana who had a property damage claim determined to be and adjusted as a covered total-loss, where such claim(s) had a date of loss from the time period of ten years prior to the filing of this suit through the date of an Order certifying the Class.

### Adjustment-Order Class

All Liberty Personal Insurance Co. insureds in the State of Louisiana who had a property damage claim determined to be and adjusted as a covered total-loss, where such claim(s) had a date of loss from the time period of ten years prior to the filing of this suit through the date of an Order certifying the Class, and where Defendant applied a positive adjustment to comparable vehicle advertised price prior to applying a "typical negotiation" adjustment.[2]

---

[2] As set forth in the Causes of Action section below, the "Adjustment-Order Class" is a subclass bringing a single cause of action in addition to the claims asserted by the Valuation Class (of which they are also Class Members). As will be explicated in briefing no doubt, while the ***merits*** of the claims are

45.    Excluded from the Classes are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his staff employees. Also excluded from the Classes are the undersigned counsel and anyone employed in their law firms.

46.    **Numerosity:** Although unable to allege a precise number of Class Members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff believes that the number of members of the Classes numbers in the thousands and perhaps tens of thousands, such that members of the Classes are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Classes are sufficiently numerous within the meaning of Rule 23(a)(1).

47.    **Commonality:** As to both classes, this litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 23(a)(2), including:

    a.   As to the Valuation Class: (1) whether Defendant's Autosource valuation system is a complies with LSA-R.S. 22:1892B(5)(a); (2) whether Defendant's Autosource valuation system is a complies with LSA-R.S. 22:1892B(5)(b); and (3) whether Defendant's use of the Autosource valuation system constitutes breach of contract and/or bad faith.

    b.   As to the Adjustment-Order Class: (1) whether Defendant's uniform method of applying certain positive adjustments prior to "typical negotiation" adjustments,

---

independent, the ***damages*** of the Adjustment-Order Class are largely subsumed within the damages of the Valuation Class claims. Thus, to the extent the Valuation Class prevails on their claims, the Adjustment-Order Class claim is for the most part superfluous as it relates to damages. To the extent the Valuation Class fails on the merits of their claims, however, the Adjustment-Order Class claim is independently viable.

while always applying "typical negotiation" adjustments prior to negative adjustments, violates Defendant's covenant of good faith and fair dealing, is exercised in bad faith, and/or constitutes a breach of contract; (2) whether such practice violates LSA-R.S. 22:1793 and/or LSA-R.S. 22:1892.

48.    **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Classes within the meaning of Rule 23(a)(3). Defendant injured Plaintiff and members of the Classes through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class Members and Plaintiff's interests are identical to those of the other Class Members.

49.    **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Classes. Plaintiff is unaware of any interest in conflict with those of the Classes, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained the undersigned as counsel, who, collectively, have successfully litigated hundreds of class actions, many of which in the insurance context, through settlement and litigated judgments. Included in the undersigned are Louisiana counsel who not only have significant experience in class litigation, but are well-versed in the idiosyncrasies and particularities of Louisiana law and local rules and procedures. As such, the adequacy requirement of Rule 23(a)(4) is satisfied.

50.    **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 23(b)(3). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the ***amount*** of damages will vary, the ***measure*** of damages will not:

a. As to the Valuation Class, either of Plaintiff's theory of damages results in a uniform measure, *i.e.*, (1) the difference between the valuation amount asserted by Defendant through the Autosource system and the value determined by a legitimate industry source such as NADA; or (2) the amount of "adjustments" designed merely to reduce the retail cost to an amount less than retail cost.

b. As to the Adjustment-Order Class, Plaintiff's theory of damages applies uniformly, *i.e.*, the difference between the "typical adjustment" amount when applied ***after*** a positive adjustment and what the "typical adjustment" would have been had it been applied ***prior to*** the positive adjustment.

51.    **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

a. Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action;

b. The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c. Because of the disparity of resources available to Defendant versus those available to individual members of the Classes, prosecution of separate actions would work a financial hardship;

d. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all

due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e.   Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

52.    Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## COUNT I: BREACH OF CONTRACT
### (on behalf of the Valuation Class)

53.     Paragraphs 1-52 are hereby incorporated by reference.

54.    This Count is brought by Plaintiff individually and on behalf of the Valuation Class.

55.    Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

56.    Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Louisiana law, Defendant's use of the Autosource valuation system constituted a breach of contract.

57.    Moreover, the conduct set forth herein was knowingly capricious and illegitimate, and otherwise constituted bad faith.

58.    Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

59.     Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

## COUNT II: VIOLATIONS OF LSA-R.S. 22:1793
### (on behalf of the Valuation Class)

60.      Paragraphs 1-52 and 54-58 are hereby incorporated by reference.

61.     As set forth herein, Defendant knowingly and/or intentionally undervalued total-loss vehicle property damage claims. Defendant did so notwithstanding its knowledge that use of legitimate used motor vehicle sources and vehicle sellers would have resulted in an accurate and fair valuation for its insureds.

62.     The conduct set forth herein violated Defendant's duties of good faith and the requirements prescribed by Louisiana law.

63.     Defendant's utilization of the Autosource valuation system violated LSA-R.S. 22:1892.

64.     As to Plaintiff and members of the putative Class, Defendant failed to fairly and promptly adjust claims and failed to make a reasonable efforts to settle claims with its insureds, which constitutes a violation of its good faith duties.

65.     Similarly, Defendant failed to pay the amount of claims due its insureds within the statutorily-prescribed time of sixty days. Moreover, such failure, as outlined herein, was "arbitrary, capricious, or without probable cause."

66.     As such, Plaintiff and members of the Class are entitled to all damages, penalties, attorney fees, costs, and relief permitted by law and deemed by this Court to be just and proper.

### COUNT III: PENALTIES AND EXPENSES OF LITIGATION
### (on behalf of Valuation Class pursuant to La. R.S. §22:1892)

67.     Paragraphs 1-52, 54-58, and 61-65 are hereby incorporated by reference.

68.     Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of its policies and Louisiana law.

69.     Plaintiff and Class Members are entitled to, and expressly pray for, expenses of litigation, all allowable penalties, and all attorneys' fees and costs pursuant to La. R.S. §22:1892(B)(1), including 50% of damages found or $1,000.00.

### COUNT IV: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
### (on behalf of Adjustment-Order Class)

70.     Paragraphs 1-26, 35-38, and 40-52 are hereby incorporated by reference.

71.     Count IV is brought by Plaintiff individually and on behalf of the Adjustment-Order Class.

72.     Defendant's practice of ordering adjustments that include a "positive" adjustment (i.e., an upward adjustment) in such a way as to always advantage Defendant and disadvantage its insureds is capricious, illegitimate, and in violation of its obligation, contractually and under La. R.S. 22:1973, to abide by its duty of good faith and fair dealing.

73.     To the extent that Defendant has any discretion in how to order adjustments, that Defendant always exercises such discretion to its own advantage and to its insureds' disadvantage is a violation of its duty of good faith and fair dealing.

74.     As a result, Plaintiff and members of the putative Adjustment-Order Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of the Classes that include all other persons similarly situated, prays that Liberty Personal Insurance Co. be duly cited and served with this Petition, be required to appear and answer the same, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Classes, with Plaintiff serving as representative of the Classes and with the undersigned serving as Counsel for the Classes;

b) For notice to be sent to the Classes in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Louisiana law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

f) For an award of attorneys' fees and expenses pursuant to La. R.S. §22:1892(B)(1) and/or La. R.S. §22:1973 or other applicable law;

g) For costs of suit incurred herein;

h) For pre-judgment and post-judgment interests on any amounts awarded; and

i) For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

This <u>17th</u> day of <u>May</u>, <u>2021</u>.

Respectfully submitted,

_____/s/ Stephen J. Herman_____
**Stephen J. Herman**, La. Bar No. 23129
**Soren E. Gisleson**, La. Bar No. 26302
**John S. Creevy**, La. Bar No. 30879
**Charles M. King**, La. Bar No. 34621
HERMAN HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
E-Mail: sherman@hhklawfirm.com

*Of Counsel:*

**Edmund A. Normand**
**Amy L. Judkins**
NORMAND PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
Telephone: (407) 603-6031
E-Mail: ed@ednormand.com

***Attorneys for Plaintiff***
***Derrick Ursin***